1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4   TAMMI JACOB, AN INDIVIDUAL;      )
    KATE NUNN, AN INDIVIDUAL;        )
5   ALUVIA SOLANO, AN INDIVIDUAL;    )
    MARY WATSON, AN INDIVIDUAL;      )
6   APRIL ZIMMERMAN, AN              )
    INDIVIDUAL,                      )
7                 PLAINTIFFS,        )
                                     )
8           vs.                      ) No. CV 19-1484-AB PLA
    MENTOR WORLDWIDE, LLC; NUSIL,    )
9   LLC; NUSIL TECHNOLOGY, LLC;      )
    AND DOES 1-100, INCLUSIVE,       )
10                DEFENDANTS.        )
    _____)
11  NICOLE VIEIRA, AN INDIVIDUAL;    )
    AND EMILIA BAROZZI, AN           )
12  INDIVIDUAL,                      )
                  PLAINTIFFS,        )
13                                   )
            vs.                      ) No. CV 19-4939-AB-PLA
14  MENTOR WORLDWIDE, LLC; NUSIL,    )
    LLC; NUSIL TECHNOLOGY, LLC;      )
15  AND DOES 1-100, INCLUSIVE,       )
                  DEFENDANTS.        )
16  _____)

17

18          REPORTER'S TRANSCRIPT OF PROCEEDINGS

19              FRIDAY, JULY 12, 2019

20                  11:18 A.M.

21             LOS ANGELES, CALIFORNIA

22  _____

23          **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
            FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFFS:

 3            FINSON LAW FIRM
              BY:  LOWELL W. FINSON, ATTORNEY AT LAW
 4            126 WESTWIND MALL
              MARINA DEL REY, CALIFORNIA 90292
 5            (602) 377-2903

 6    FOR THE PLAINTIFFS:

 7            LENZE LAWYERS, PLC
              BY:  JENNIFER LENZE, ATTORNEY AT LAW
 8            1300 HIGHLAND AVENUE, SUITE 207
              MANHATTAN BEACH, CALIFORNIA 90266
 9            (310) 322-8800

10
      FOR THE DEFENDANTS:
11
              TUCKER ELLIS LLP
12            BY:  DUSTIN B. RAWLIN, ATTORNEY AT LAW
              950 MAIN AVENUE, SUITE 1100
13            CLEVELAND, OHIO 44113-7213
              (216) 696-4235
14

15    FOR THE DEFENDANTS:

16            TUCKER ELLIS LLP
              BY:  MONEE TAKLA HANNA, ATTORNEY AT LAW
17            515 SOUTH FLOWER STREET, 42ND FLOOR
              LOS ANGELES, CALIFORNIA 9001-2223
18            (213) 430-3378

19    FOR THE DEFENDANTS:

20            PRICE, POSTEL & PARMA, LLP
              BY:  MELISSA J. FASSETT, ATTORNEY AT LAW
21            200 EAST CARRILLLO STREET, SUITE 400
              SANTA BARBARA, CALIFORNIA 93101
22            (805) 962-0011

23

24

25
```

```
 1            LOS ANGELES, CALIFORNIA; FRIDAY, JULY 12, 2019

 2                          11:18 A.M.

 3                            - - -

 4            THE CLERK:  Calling CV 19-1484, Tammi Jacob, et

 5   al., versus Mentor Worlwide, LLC, et al., and CV 19-4939

 6   Nicole Vieira, et al., versus Mentor Worldwide, LLC, et al.

 7            Counsel, please step forward and state your

 8   appearances.

 9            MR. FINSON:  Good morning, Your Honor.

10   Lowell Finson for the plaintiffs in both the cases.

11            THE COURT:  Good morning.

12            MS. LENZE:  Good morning, Your Honor.

13   Jennifer Lenze for plaintiffs.

14            THE COURT:  Good morning.

15            MS. FASSETT:  Good morning, Your Honor.

16   Melissa Fassett for NuSil Technology and NuSil, LLC.

17            THE COURT:  Good morning.

18            MR. RAWLIN:  Good morning, Your Honor.  Dustin

19   Rawlin for Defendant Mentor Worldwide, LLC.

20            THE COURT:  Good morning.

21            And last but not least?

22            MS. HANNA:  Good morning, Your Honor.  Monee Hanna

23   for Defendant Mentor Worldwide, LLC.

24            THE COURT:  All right.  So, Ms. Hanna, you're only

25   as it -- well, no, actually, you're involved in both cases.
```

```
 1              MS. HANNA:  Yes, Your Honor.
 2              THE COURT:  Okay, yeah.  I think we're -- okay.
 3    Great.
 4              So I did issue tentatives in both cases.  Have the
 5    parties -- I'm assuming, based on the hour, the parties have
 6    had time to review the tentatives, but if I am incorrect,
 7    please let me know.
 8              MR. FINSON:  No, we've had ample opportunity to
 9    review them, Your Honor.  Thank you.
10              THE COURT:  All right.
11              And from the defense?
12              MS. HANNA:  Yes, Your Honor.
13              THE COURT:  So as with all tentatives, usually one
14    side usually thinks I got it right and the other side thinks
15    I don't know what I'm doing.  And so with that, let's start
16    with -- if it's okay, let's start with the Jacob case.  And
17    I guess -- is it Mr. Finson?  If you'll step to the lectern.
18              MR. FINSON:  Yes.
19              THE COURT:  And obviously, I'm -- on both matters,
20    I'll allow you to be heard as to anything else that you wish
21    to state on the record, but I had some specific questions
22    that I wanted to ask you.
23              Talk to me about, you know, the impossibility
24    here.  Couldn't service have been initiated on the same day
25    that the Complaint was filed, or is it your position that
```

```
1    that just was unrealistic?
2              MR. FINSON:  It was not only unrealistic, but it
3    was impossible because we didn't get a conformed copy of the
4    Complaint which is required before you can serve until the
5    next day.
6              As soon as we got it, we served it.  And I think
7    24 hours is just -- to me it brings the whole statute to
8    a -- it's a logical absurdity, and that is, if the
9    defendants are allowed to stand by and monitor a docket and
10   we have a slower service person, then they could certainly
11   make the argument here.
12             With all due respect to both sides, I think that
13   24 hours is just incredible.  The day we got the conformed
14   copy, our service person went out and served the Complaint.
15   One day, 24 hours.
16             THE COURT:  All right.  And then I'll ask.  Why
17   shouldn't the Court just adopt a plain meaning
18   interpretation of the statute's joined and severed language?
19             MR. FINSON:  Because courts all over the country
20   have refused to adopt that standard.  And the standard,
21   again, brings that statute to its logical absurdity, and
22   that is is, when the rule allows us to claim foreign
23   defendants as parties to a case, that interpretation would
24   preclude that from ever happening because -- although it
25   didn't happen here, but it certainly looks like it might
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   have happened here, and that is they were standing, hovering

 2   over the clerks office and saw this and then had their stock

 3   notice of removal ready to go and filed within 24 hours.

 4        And I just -- Your Honor, I could beat this horse

 5   to death, but no Court, at least in the Ninth Circuit, has

 6   indicated that 24 hours is appropriate.

 7        Now, you wrote the Dechow case, and I read that

 8   case, and it was two weeks.  We may disagree as to whether

 9   or not it was the right thing to do, but certainly the

10   argument in Dechow is different than the argument here.  24

11   hours is just an incredibly short period of time.

12        THE COURT:  Are you saying that now -- I think you

13   said, in fairness, number of Courts have refused to adopt

14   that interpretation.  But the Second and Third Circuits

15   have, haven't they?

16        MR. FINSON:  I believe the Second and Third

17   Circuits have.  I still think that they require no -- you

18   can't have an absurd result.  And thank heavens we're not in

19   the Second and Third Circuits is all I can say to you,

20   Your Honor.

21        THE COURT:  Okay.  All right.  Let me see if I

22   have any other questions as it relates to the -- I think

23   that was it.  Any other points you wish to raise that we

24   haven't covered?

25        MR. FINSON:  I'm not sure this is the time to
```

```
 1   raise a point.  But the fact is, Your Honor, certainly I'm
 2   willing to submit on the tentative for the remand.
 3           However, just to make things clear, we are set --
 4   in the Vieira case, we're set for a hearing on our motion to
 5   remand on August 2nd.  And what I would wonder if the Court
 6   would just accept is that perhaps on the issue of the motion
 7   to dismiss, that it be held off until that period of time.
 8   I'll come back, and I'll address the issue after we're done,
 9   if that's what you would like me to do.
10           THE COURT:  I may ask you to do that.
11           MR. FINSON:  All right.  Thank you, Your Honor.
12           THE COURT:  So let's hear from the defense.
13           Is it Mr. Rawlin?
14           MR. RAWLIN:  Yes, Your Honor.  May it please the
15   Court.
16           On the impossibility issue, I mean, the Court's
17   docket says that the summons was available on February 27th.
18   The defendants removed on the 28th.  As your tentative
19   notes, there is nothing preventing a defendant from watching
20   dockets and removing under the plain language of the statute
21   when they get notice of a case, which is what the defendants
22   did here.
23           THE COURT:  Sure.  All right.  But, I mean, I have
24   also expressed some concern about -- I'll just call it what
25   I -- sort of, this trolling of the dockets, if you will.
```

```
 1   Isn't this getting a little close to that?
 2          MR. RAWLIN:  Your Honor, a defendant has a
 3   constitutional right to remove to federal court when, you
 4   know, the informed defendant, which we'll get to, is not a
 5   proper party.  And the plaintiffs know that, and they
 6   continue to name this improper party to game the system to
 7   get into state court.
 8          So under those circumstances, defendants who are
 9   diverse and are not California residents, removing the case
10   to federal court is entirely appropriate, and it's within
11   the bounds of the removal statute, as you Your Honor ruled
12   in Dechow.
13          It was not impossible for them to remove.  They
14   could have served us the same day or early in the day on the
15   28th.  They did not, and the removal was entirely
16   appropriate.
17          THE COURT:  Okay.  Now, I know there's another
18   issue you want to discuss.  Go ahead.
19          MR. RAWLIN:  Your Honor, the issue of NuSil, LLC.
20          THE COURT:  Yes.
21          MR. RAWLIN:  I don't think there's any way,
22   looking at the evidence, the evidence, of what NuSil, LLC,
23   is, that any Court could reasonably say there's a fact
24   question as to whether that entity --
25          THE COURT:  You mean despite the fact that, at one
```

1  time they say they were a holding company, at one time they

2  say they manufactured these --

3            MR. RAWLIN:  Your Honor, that was a statement of

4  information corporate form.  The gentlemen who signed the

5  form said that's clerical error.  "I wouldn't have signed it

6  if I had seen that."

7            THE COURT:  But I guess that raises a question, at

8  least in my mind -- "I wouldn't have signed it if I had seen

9  that."

10           MR. RAWLIN:  Right.

11           THE COURT:  He signed it; right?

12           MR. RAWLIN:  He did, and he admits it was a

13 clerical error.  "They put forms in front of me, I signed

14 them."  But he clearly says, from its inception, it was --

15 its inception, it was conceived as NuSil Holdings, LLC.  The

16 name was changed to NuSil, LLC, a couple months later.

17           From 2005 to now, it has always been a

18 stockholding entity.  His deposition, which I encourage

19 Your Honor to read -- it's not that long --

20           THE COURT:  Right.

21           MR. RAWLIN:  -- he repeatedly says it has always

22 been a holding entity --

23           THE COURT:  I get it.

24           MR. RAWLIN:  It has never been a manufacturing

25 entity.  On that record, there's no way that any Court could

1    say maybe they're a manufacturer.  They're not.  They don't

2    have a physical location.  They don't have a manufacturing

3    facility.  There's no possible way that they can be held

4    liable as a manufacturer of silicone use -- and silicone gel

5    breast implants.

6           They have always been a stockholding entity.  The

7    fact that there was a clerical error that's been corrected

8    that we put up -- that NuSil, LLC, put up a representative

9    to testify under oath to clear up that clerical error --

10   there is no fact question.  There is no question that it has

11   always been a stockholding entity.  It has never been a

12   manufacturer.

13          They have the manufacturer in the case.  This is

14   not like gamesmanship of, oh, you can't get us.  They have

15   the entity that the defendants have said they're the

16   supplier.  They have them in the case.

17          Why are the plaintiffs so intent on continuing to

18   sue NuSil, LLC?  Because they're a California entity with

19   California members.  They want to be in state court.

20          You saw, Your Honor, that they moved for a

21   coordinated -- that's what they want.  This is all a mass

22   tort plaintiff firm move to -- we want do have a JCCP, and

23   so we're going to find whoever we can who's related to

24   California so we can group a bunch of plaintiffs together

25   with one California plaintiff, sue in state court, and get

1    our coordinated proceeding in state court there because we

2    think it's going to go better for us because we're worried

3    about the preemption issue as, Your Honor ruled in Vieira is

4    a very clear defense, we are hopeful that a state court

5    won't understand that issue.

6            THE COURT:  I get it.  And I've got a massive

7    multi-district litigation.  So I'm familiar with the issues.

8    But I guess what I'm struggling with here is that, A, aren't

9    I supposed to give the presumptions to the plaintiff -- to

10   the nonremoving party in the first instance?  And then,

11   secondly, I mean, I just -- I get he says it's a clerical

12   issue.  But I mean, it's a page document, and I've got

13   things that suggest different, sort of -- they're different.

14   I mean, they, you know --

15           MR. RAWLIN:  With all due respect, Your Honor,

16   there is no other evidence ever that this is a manufacturing

17   entity.  There's no manufacturing facility, there's no, oh,

18   look.  They have a contract with Mentor where they're

19   supplying.  There is zero evidence in the record --

20           THE COURT:  There's a statement of information.

21   That's not evidence?

22           MR. RAWLIN:  Your Honor, it's a clerical error and

23   he --

24           THE COURT:  Hold on.  I understand that's your

25   explanation, but there is a statement of information that

```
 1   suggests it's something else; right?  That's -- I mean, I

 2   understand their explanation --

 3             MR. RAWLIN:  Sure.

 4             THE COURT:  -- but that's evidence, isn't it?

 5             MR. RAWLIN:  Your Honor, it's evidence -- it's

 6   evidence that has been explained to be in error.

 7             If someone says something and they're incorrect,

 8   it can't be the case that for all time we're going to say

 9   that's what it is.  The person can't come in and correct

10   their statement to say that, because NuSil, LLC, in error,

11   filed a routine corporate filing with the Secretary of State

12   in 2013 that said something that was inaccurate -- it's

13   wrong.  Everyone knows it's wrong.  So this is kind of all

14   big -- everyone knows it's wrong.

15             To then say for all time you can be held liable as

16   a manufacturer because you made a mistake in 2013, despite

17   the fact that there's two, three declarations sworn under

18   oath that state that was wrong and a deposition in this case

19   where we went to the plaintiffs and said, "Do you want to

20   clear this up mistake?  Do you want to clear up this

21   inaccuracy?  We're going to give you someone to testify

22   under oath under penalty of perjury to clear this up so

23   there's no question going forward do you have the right

24   party or not."

25             And they said, "Sure.  We would love that
```

1    opportunity."

2              And they went to the deposition, and Mr. Finson

3    asked Mr. Mraz under oath --

4                        (Reading:)  Also NuSil, LLC, has not

5              developed, designed, manufactured, supplied,

6              or distributed any products including the

7              silicone or silicone gel used to manufacture

8              breast implants; is that correct?

9                        ANSWER:  Correct.  Page 40 of his

10             deposition.

11             That should answer the question.  That's it.  The

12   issue is now closed.  It's been clarified for the plaintiffs

13   that they are not a proper party, they're not a

14   manufacturer.  Everyone knows that now.

15             THE COURT:  Let me ask Mr. Finson.  Do you

16   disagree with that assertion?

17             MR. FINSON:  Sure.  I disagree with the fact that

18   what Mr. Rawlin wants us to do is to accept this person's

19   word for the fact that, when he filed a document with the

20   State of California, apparently he cared little to find out

21   whether or not it was accurate.

22             And if he thinks I believe Mr. Mraz, the answer is

23   I don't.  And I think -- and the reason I don't believe him

24   is because I asked him at his deposition, "Hey, look.  Don't

25   you think it's right to read what you sign?  Don't you think

1    it's important that things filed with the Secretary of the
2    State of California indicating your status at least insofar
3    as the Secretary of State is concerned should be accurate?"
4             And he said, "Yes, but in this case it was a
5    mistake."
6             And I will tell you this, Judge.  The issue is
7    whether -- whether or not this mistake was, in fact, a
8    mistake or whether it was their gaming the system because
9    all of a sudden, when we filed the case, they realized,
10   uh-oh, we're stuck in state court.  And that's -- to me
11   that's the end of the story.
12            THE COURT:  I mean, we're getting a little outside
13   of this motion somewhat.  So what's -- your solution is
14   what?  To have an evidentiary hearing?  Or how do you
15   resolve this?
16            MR. FINSON:  Oh, you resolve it by having an
17   evidentiary hearing, but first you have an exchange of
18   documents.  For instance, tax returns.  That would be
19   something that if I -- I mean, if I were them, I would have
20   presented that to the Court a while back because certainly
21   there are tax advantages to being a holding company.
22            We asked -- we had a request for production for
23   this deposition.  The request for the -- the request was
24   bring with you all the documents that support the fact that
25   you are a holding company.  They brought nothing but the

```
 1   corrected document.

 2            And, you know, we want to start getting documents.

 3   We want to start getting information moving forward, and

 4   then there can be an evidentiary hearing, or they could file

 5   a motion for summary judgment if they want.

 6            But at this stage of the game, it's a remand

 7   issue, and I would agree with Your Honor's tentative that,

 8   under these circumstances, the case should be remanded.

 9            THE COURT:  All right.

10            Counsel, Mr. Rawlin.

11            MR. RAWLIN:  Yeah, your Honor.  I mean, I want to

12   make clear I don't represent NuSil, LLC.  Ms. Fassett does.

13   I represent Mentor.  But Mentor's rights of being removed to

14   federal court are very implicated by this issue.

15            Mr. Finson said, "We asked for documents."  No,

16   they absolutely did not.  Their notice of deposition says --

17                 (Reading:)  Give us status and

18            information related to defendant NuSil as a

19            company and its involvement to any other

20            related companies that manufacture and supply

21            silicone.  Identify names and functions of

22            every entity for which NuSil is a holding

23            company.

24            THE COURT:  Slow down.

25            MR. RAWLIN:  (Reading:)
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1                    Identify names and functions of
2            every entity for which NuSil is a holding
3            company.  Identify names and addresses of
4            NuSil board of directors.
5            Mr. Finson did not say bring tax returns with you.
6            THE COURT:  But what about the statement "Give us
7    information related to" --
8            MR. RAWLIN:  Mr. Mraz did.  And at the thing was
9    the Articles of Incorporation which said that it was
10   incorporated as a stockholding entity named NuSil Holdings,
11   LLC, and that it was changed.  When they figured out there
12   was this clerical error, they changed it.  They didn't
13   say -- [making noise].  They changed it.
14           I mean, if you want to know what the truth is, the
15   fact is, well, we screwed up.  That's clerical error.  We
16   changed it.  Then we did a declaration.  Then we did a
17   declaration of Mr. Banigan, then a declaration of Mr. Mraz.
18   We put up a deposition of Mr. Mraz.
19           We sat under oath and answered questions about
20   what is NuSil, LLC?  Does it manufacture silicone?  Can we
21   sue them as a manufacturer?  The answer unequivocally is no.
22   They are a stockholding entity, have been since 2005.  There
23   is no question about that.
24           And if Your Honor wants to -- if you want to have
25   a --
```

```
 1              THE COURT:  Hold on.  Hold on.

 2              MR. RAWLIN:  Sure.

 3              THE COURT:  I missed this part.  I just want --

 4      what did you say about the Articles of Incorporation?

 5              MR. RAWLIN:  The Articles of Incorporation of

 6      NuSil, LLC, was -- original name was NuSil Holdings, LLC,

 7      was in 2005 when it was incorporated.  That was its original

 8      name.  So it was a holding company from the beginning.

 9              THE COURT:  Were those Articles of Incorporation

10      provided to anyone?

11              MR. RAWLIN:  Yes.  They have them, and they were

12      marked as an exhibit in the deposition.

13              THE COURT:  Got it.  Okay.

14              MR. RAWLIN:  So this is not a situation where they

15      don't know.  They know that NuSil, LLC, is not a proper

16      party.  They simply want them in the case because they're a

17      California entity.

18              If Your Honor wants to have an evidentiary

19      hearing, I bet you NuSil, LLC, is happy to show up to an

20      evidentiary hearing to say we are not a manufacturer of

21      silicone.  They're not.  And they have the correct

22      manufacturer.  They have NuSil Technology, Ltd.  That entity

23      is in the case already.

24              So this isn't a we're, you know, precluding them

25      from getting a remedy against the proper defendant.
```

1    Mentor's the manufacturer of the implants.  NuSil Technology

2    is the supplier of the silicone.  Those parties are here.

3    And it cannot be the law that, if there's a clerical error

4    that's then rectified by declaration, correction, deposition

5    testimony --

6              THE COURT:  I don't think anyone's suggesting that

7    is the law.  The question, which is one of the reasons why

8    we have hearings is, all I saw is people were saying yea or

9    no.  It is; it isn't.  And you have a document that suggests

10   one thing and a statement by an interested party, one that

11   might have an interest in denying it, to the contrary; and

12   therein lies the discussion.

13             MR. RAWLIN:  And, Your Honor, the reason why we

14   asked Judge Gutierrez, who had this case before Your Honor

15   did -- we went to the plaintiffs and said, "Let's do a

16   deposition and put this to rest."

17             And they said, "Great.  Let's do the deposition."

18             Mr. Finson walks out of the deposition and goes,

19   "We're going to have to dismiss" --

20             MR. FINSON:  I object to that.  That's not what

21   happened.

22             MR. RAWLIN:  That is.

23             MR. FINSON:  No, it's not.

24             THE COURT:  I don't want to get into all that.

25             MR. RAWLIN:  And everyone at the deposition -- you

```
 1    read the deposition.  It's unequivocal.  It's undisputed
 2    that NuSil, LLC, is not a manufacturer.  And then they said,
 3    "Well, we're not going to dismiss them anyway."
 4          As Your Honor might know, there is a motion for
 5    Rule 11 sanctions that NuSil, LLC, has filed against the
 6    plaintiffs because they refused to voluntarily dismiss them
 7    despite the overwhelming undisputed evidence they are not a
 8    proper party.  I mean, that's not something you do lightly;
 9    right?  That's not something you just do on a whim.  That's
10    not something you do --
11          THE COURT:  Some lawyers do.
12          MR. RAWLIN:  Maybe some do, Your Honor.  I mean,
13    that's not --
14          THE COURT:  You're not in Kansas anymore.  No, I'm
15    just kidding.
16          MR. RAWLIN:  I mean, that's not typically in
17    federal court what someone would do lightly.  That's
18    something you do when it's serious.
19          And so Your Honor, based on the overwhelming
20    evidence -- and again, the deposition, it is undisputed when
21    you read the deposition that he says it's a stockholding
22    entity.  It doesn't have a location.  It doesn't have a
23    manufacturing facility.  It simply holds stock.
24          And if that's the case, it is not a proper
25    party -- and so we have true diversity.  We have diversity.
```

```
 1    NuSil Technology, Ltd., is Pennsylvania and Delaware; and
 2    Mentor is New Jersey.  And the plaintiffs are all different
 3    states.  And so we have absolute diversity, and this case
 4    should be in federal court a hundred percent.
 5         THE COURT:  All right.  Thank you, Counsel.
 6         MR. RAWLIN:  Thank you.
 7         THE COURT:  Let me ask Ms. Hanna or Ms. Fassett,
 8    do you wish to be heard as it relates to this motion --
 9    yeah, this case, I should say, yes.
10         MS. FASSETT:  Thank you, Your Honor.  I appreciate
11    the opportunity to speak on this.  I represent NuSil, LLC,
12    and I defended the deposition of NuSil, LLC's corporate
13    representative.  And I'd like to just add a couple of things
14    to what Mr. Rawlin has already explained.
15         Your Honor, if this were a case in which we only
16    had a 2013 statement of information, I don't think it would
17    have created an issue of fact, but arguably, it could have.
18         But we have much more evidence than that.  We have
19    founding documents, Articles of Incorporation for NuSil,
20    LLC, which states it was a holding company.  We have
21    subsequent filings with the Secretary of State which state
22    it was a holding company.  We have declarations from at
23    least two of the corporate representatives for NuSil, LLC,
24    who both state it was a holding company.
25         It has never had any function.  It does not have a
```

1    physical address.  It does not serve any purpose.  The

2    purpose is to hold interests in stock for the benefit of its

3    members.  That is all.

4            And as Mr. Rawlin stated, we were -- offered to

5    the plaintiffs' counsel the ability to take a deposition of

6    a corporate representative so that they could inquire about

7    any of the background, facts, and circumstances that might

8    help to elicit information that might clarify that issue

9    because they stated that there was uncertainty in their

10   mind.

11           So we presented an order to the Court, the Court

12   permitted it, and the deposition went forward, and

13   Mr. Finson was allowed to ask all of the questions that he

14   wanted about whether NuSil, LLC, was a proper party to the

15   litigation.  And he did that, and he asked questions about

16   the role and the function that the entity served, and the

17   representative answered all of those questions and explained

18   that it had no physical address, it did not do anything, it

19   did not have any products, it simply held stock for the

20   benefit of its members.

21           And there were no further questions asked, and it

22   was laid to rest.  There was no withholding of information

23   or withholding of documents.  So at the end of the

24   deposition, we felt and we understood from counsel that

25   those issues had been resolved.

1    If the Court believes that there's a need for a

2    further evidentiary hearing, we have no objection to that,

3    but we believe this is an important issue and that NuSil,

4    LLC, is being used as a pawn to try to bring this case into

5    a court in which it does not belong.

6    The defendants do have a constitutional right,

7    Your Honor, to have the case removed to federal court when

8    complete diversity exists, and it does.

9    NuSil, LLC, is not a proper defendant, and I know

10   that's -- you've already heard that argument from counsel,

11   but I just want to reiterate that on our behalf, Your Honor.

12   And to the extent that a further hearing is desired, we're

13   happy to participate in that.

14   THE COURT:  All right.  Thank you, Counsel.  I

15   appreciate it.

16   MR. RAWLIN:  Your Honor, if I may on the same

17   case --

18   THE COURT:  Yes.

19   MR. RAWLIN:  -- if I may.

20   I just want to point out, looking at the

21   tentative, there was a slight -- there was an error.  The

22   opinion says -- the tentative says the Amended Statement of

23   Information was filed July 23, 2018 --

24   THE COURT:  If you could, just let me pull it up

25   so I could -- what page and line so, if there is a mistake,

1    I can just make a note?

2           MR. RAWLIN:  Yes, Your Honor.  It's page 10 of the

3    tentative on the Tammi Jacob case.

4           THE COURT:  Page 10.  Okay.  Go ahead.

5           MR. RAWLIN:  In the bottom paragraph, it says, the

6    amended statement was filed on July 23rd, 2018, shortly

7    after lawsuit was filed.  I believe that's from Vieira, from

8    the Vieira --

9           THE COURT:  Okay.  Got it.

10          MR. RAWLIN:  This case was actually filed in

11   February of 2019.  So it's actually -- was corrected seven

12   months before this case was filed, which might -- I think in

13   Vieira, Your Honor felt that that -- the timing of that

14   correction mattered.  Here we have -- it happened seven

15   months before.  It was kind of a settled issue at the time.

16          And then, Your Honor, I want to speak to -- the

17   tentative has a short section on joinder, that the

18   plaintiffs' claims are properly joined --

19          THE COURT:  Yes.

20          MR. RAWLIN:  -- and I wanted to respond to that.

21          The tentative says that the primary distinction

22   between plaintiffs' claims is the state in which plaintiffs

23   underwent surgery.  Nothing else distinguishes each

24   plaintiffs' claims.

25          Your Honor, respectfully, that's just not true.

1    You have different doctors with different knowledge giving

2    different warnings, different manufacturing lots of

3    implants.  We're talking about, you know, a manufacturing

4    defect.  These implants probably are made in different lots,

5    in different batches.  You have different times of implants

6    spanning years.  You have different medical histories and

7    injuries alleged.

8          So it is not the case that these women are all

9    exactly the same and are -- you know, it's not like an

10   airplane crash where all the same instant together.  And

11   many, many courts sever these claims because they recognize

12   they're not properly in the same case together.

13         One of their claims does not rely -- rise or fall

14   on whether the other plaintiffs' claims rise or fall.

15   They're all separate.

16         THE COURT:  But does it have to be exactly the

17   same in order to join them?  I mean --

18         MR. RAWLIN:  Have to be same transaction or

19   occurrence and common set of facts or law, and none of these

20   women -- they're all from different states with different

21   doctors, different medical histories, getting different

22   implants.  The fact they say, oh, we all agree that the

23   implant that we got was defective is not the type of

24   transaction or occurrence where you can join people

25   together.

```
 1            THE COURT:  But aren't they all getting the same
 2    implant?
 3            MR. RAWLIN:  I mean, they're all manufactured in
 4    different batches.  They're the same implant, sure.  They're
 5    same PMA approved by the FDA implant, yes, but they're a
 6    process -- I mean, if we're talking about failure to warn
 7    claims, what the doctor told each of them is going to be
 8    different.  What that doctor knows about the risks is
 9    arguably different.
10            The manufacturing defect -- it's not a design
11    defect claim.  It's a manufacturing defect.  So what you're
12    saying is each of the implants was made differently, came
13    off the assembly line wrong.  Well, that's not exactly the
14    same for each of them.
15            And so this is not -- they can be severed.  My
16    point is they can be severed, and many courts do sever when
17    plaintiffs are filed together with a medical device or
18    pharmaceutical.  Many courts do sever out those claims.
19            For instance, in West Virginia, Southern
20    District of West Virginia, transvaginal mesh cases.
21    Ms. Lenze is familiar with that.  Judge Goodwin --
22            THE COURT:  You've got to slow down.
23            MR. RAWLIN:  I'm very sorry.
24            THE COURT:  The court reporter's fingers are going
25    to fall off here.
```

```
 1              MR. RAWLIN:  In the Southern District of West
 2    Virginia in the transvaginal mesh MDL, a very large MDL
 3    which Ms. Lenze is familiar with, Judge Goodwin, who
 4    presided over that, when he would get a multi-plaintiff
 5    Complaint would sever them immediately upon being
 6    transferred in to the MDL, say these are all separate
 7    claims.
 8              And so that is routinely done in cases where those
 9    plaintiffs were all saying we had the same mesh device, but
10    we had, you know, different injuries, different doctors,
11    different warnings, different experiences with the products.
12    And that's the case here.  So these women here can be
13    severed out.
14              THE COURT:  Right.  I understand -- I think I
15    understand your point.  I just don't know if I agree with
16    the ultimate conclusion that they should be severed out.  I
17    mean, I think there's arguments on both sides of this issue,
18    I guess, is my point.
19              MR. RAWLIN:  And, Your Honor, our -- it's kind of
20    a -- it's an alternative argument.
21              First of all, we don't believe NuSil, LLC, is a
22    proper party, and so we have diversity.  But if Your Honor
23    were -- say, well, I'm still not sure, which I don't know
24    that from any -- if you read the deposition, there can
25    really be no question, you can sever out the California
```

```
 1    person and preserve diversity.  That is within the Court's
 2    discretion, and you can do that.  That was our point.
 3                THE COURT:  Okay.  Got it.
 4                MR. RAWLIN:  Thank you, Your Honor.
 5                THE COURT:  Thank you.
 6                All right.  Anything further on this case, on the
 7    case ending in 484?
 8                MR. FINSON:  No, Your Honor.
 9                THE COURT:  All right.  So I'll take this matter
10    under submission and it will remain under submission until
11    the Court issues its final order.
12                Let's shift, if we could, to case ending in 939,
13    the Vieira case.
14                Who wishes to be heard with respect to that
15    motion?
16                MR. FINSON:  I guess it's me.
17                THE COURT:  All right.  Mr. Finson.
18                MR. FINSON:  Your Honor, as I said before -- and I
19    want to make this very clear to the Court -- I disagree with
20    the tentative.  However, because you gave us an opportunity
21    to amend within 14 days, certainly we can do that.  And
22    certainly, if the tentative stands, we will do that.
23                But here's the problem.  The problem is is that,
24    on August 2nd, we have the Vieira remand situation coming
25    up.  And because of that, it would seem to me that, if we
```

```
 1   amend, we're going to have an overlap of issues.

 2              THE COURT:  Although one could argue that knowing

 3   that that August 2nd issue's looming, that would be an

 4   incentive for the Court to issue a ruling on this case

 5   sooner than later.  Right?

 6              MR. FINSON:  No.  I disagree with you,

 7   respectfully, of course, disagree with you.  The issue of

 8   remand is first because the Court had jurisdiction of this

 9   case.

10              THE COURT:  No, no.  I'm sorry.  Maybe I wasn't

11   clear.  I could deal with the remand issue that we just

12   talked about in Jacob and also deal with it in Vieira all in

13   one order, given the likelihood that -- I've heard the

14   arguments.  The arguments are identical.

15              So, you know, as you know, I mean, not every judge

16   holds hearing on these motions.  I could easily just say,

17   you know what?  I heard the argument, I'm assuming that

18   neither side's going to make any new arguments; so I'm going

19   to now advance the -- I'm going to take the papers that have

20   been filed in Vieira on the remand, consider them all as I'm

21   writing the order on Jacob.

22              MR. FINSON:  Certainly, Judge.  I hope that you

23   would do something along those lines.

24              THE COURT:  Okay.

25              MR. FINSON:  The problem, though, is simply this:
```

```
 1    I would -- I have some arguments I could make that -- where
 2    I disagree with you --
 3            THE COURT:   On the preemption issue.
 4            MR. FINSON:   Yeah, on the preemption issue.
 5            But on the other hand, worse comes to worse, if I
 6    walk away and you say, "Well, the tentative stands," I just
 7    file another case, start filling in the blanks where you
 8    think the blanks should be filled in, and we can to that.
 9    Certainly, we'll do that.
10            But we'll be in the same situation, I am sure,
11    where they're going to say, look, it's the same thing, and,
12    therefore, they're going to file another motion, we'll be in
13    front of the Court in another couple of months or something.
14            What I would ask the Court to do -- and this is
15    something that -- rather than sit here and argue with what
16    you have said, I would be willing to just file an amended
17    Complaint.
18            However, what I would like to do, if that would be
19    okay -- or if you're going to issue an order on the remand
20    at the same time, that's okay too -- but certainly we
21    could -- if you would advance the 14 day amendment till
22    after the remand hearing, which is only a couple of weeks,
23    and that would solve the problem insofar as what would
24    happen.
25            If you grant the remand, then the
```

1    Amended Complaint is unnecessary.  If you deny it, then 14

2    days later, we can amend it.

3            THE COURT:  But in your amendment, are you going

4    to allege anything to defeat the preemption concern?

5            MR. FINSON:  Absolutely, Your Honor.  I read what

6    you said.  I mean, I read that.  I disagree with -- oh,

7    gosh.  Again, with great deference to the Court, I disagree

8    with your assessment of the law of preemption because what

9    it suggests is is that, without having any discovery,

10   meaningful discovery, it would be very simple to say that

11   these -- sort of a case is preempted.

12           However, because you gave us the leave to amend,

13   where you have indicated you find the plaintiffs'

14   200-and-some-odd paragraph Complaint is lacking, we'll fill

15   it in.

16           I mean, I saw what you said.  An example, I think,

17   was you indicated that Barozzi was a Colorado plaintiff.

18   Well, Your Honor, in your prior order in Vieira, you said,

19   yeah, Barozzi is a California plaintiff, but what you said

20   was was that California has an interest in maintaining

21   the --

22           THE COURT:  Colorado.

23           MR. FINSON:  Well, no, California has an interest

24   in allowing its long reply to in-state defendants

25   irrespective of the location of the plaintiffs.  That's what

 1    your order said.  I'm sorry that I was obtuse on that one.

 2              But on this one, real quickly, I'll just run

 3    through some things.  I'm not going to devote a lot of time

 4    to it.  I read what you said.  But because you gave us the

 5    leave to amend, you know, I also know what you're asking us

 6    to do.  There's a couple things.

 7              One thing is the defendants argued that, and you

 8    have adopted that argument, that we have not specified what

 9    was unreported.  To me, it's a little bit difficult to tell

10    you what it was that was unreported if in fact it was

11    unreported.

12              And I -- our experts indicate that they're aware

13    of the fact that there's underreporting.  I know that the

14    defendants in this case in March of this year received a

15    warning letter from the FDA indicating you guys are -- you

16    guys better straighten up and fly right.  I just saw that

17    today, by the way, didn't even know that existed until

18    today.

19              But in any event, what the parallel claim is is

20    the same as in Coleman.  Coleman is the key case in here.

21    The parallel claims and the law in California is the same as

22    the FDA rules and regulations.

23              And again, the rule is that we must claim

24    violations of the FDCA, and we have listed in a bunch of

25    paragraphs where we claim there have been these violations

1    in our Complaint.

2              But in other words, that has to exist, but the

3    state claim must be based not upon what the FDA has said but

4    what the state of the law in California is.  And that is is

5    that you can state parallel claims if you can establish that

6    the violations were violations of the FDCA but the case

7    doesn't stand upon that premise.

8              In other words, we're not claiming, because they

9    violated those rules, that's the cause of action.  The cause

10   of action is for negligence, underreporting, failure to

11   warn.  And those things existed long before the FDCA, at

12   least in this particular case, indicated there was a

13   problem.

14             Judge, I could go on, but look.  I read what you

15   said.  I appreciate you allowing us to amend.  And if that's

16   the position you want to take, then we'll take it.  I can

17   understand that.

18             I think that your prior ruling in the Vieira case

19   is telling as to how you felt about this, and I apologize

20   for taking the time that --

21             THE COURT:  Oh, no, no.  No need to apologize.

22   That's what I'm here for.

23             So, Mr. Rawlin, you have nothing to say, I assume.

24             MR. RAWLIN:  Nothing, Your Honor.

25             Your Honor, first of all, I think Mr. Finson -- I

1  want to say he's probably not misrepresenting the Court.  He

2  is probably misremembering.

3         When he says that Your Honor had a prior order

4  where you said that California had an interest in

5  Ms. Barozzi's case, I think he's thinking of another judge

6  in the Superior Court of California, not Your Honor.

7         I'm looking at your order granting motion of

8  plaintiff to remand, which is the only order I think you

9  issued.  It doesn't talk about choice of law.  I think he's

10 talking about our judge in Vieira in state court.  So you

11 have not ruled on an issue, and I think frankly the Colorado

12 choice of law is exactly the correct issue.

13        THE COURT:  Getting praise from Mr. Rawlin.  I

14 should mark the date and mark the docket.

15        MR. RAWLIN:  Well, your Honor, I love your

16 tentative in Vieira, not surprisingly.

17        A couple things.  Mr. Finson mentioned a warning

18 letter from the FDA.  That actually deals with a different

19 product, and it deals with how many patients we've enrolled

20 in a clinical study.  It's not about underreporting adverse

21 events.  There's no warning letter about that.  So I just

22 want to make sure the facts are clear.  Because what the

23 plaintiff's claim really is in these cases and which they --

24 we've won in Ebrahimi and Mize both in Central District of

25 California and Los Angeles Superior Court on these exact

```
 1   claims, and the plaintiffs' claims are this -- and it's --
 2   this is cut and paste from a 2011 FDA update on the safety
 3   of silicone gel breast implants.
 4        The plaintiffs' claim is you had post-approval
 5   studies that you were supposed to do.  The FDA took some
 6   issue and says, well, your follow-up wasn't very good.  Only
 7   so many percentage of patients came back over time.
 8        And they're saying, if you had done those studies
 9   differently, if you had better follow-up, more patients --
10   whatever, we think maybe you would have gotten possibly more
11   adverse events which you would have been required to report
12   to the FDA, and then maybe we would have more information
13   for doctors.
14        Well, that's not a claim.  That's not a claim
15   recognized by Coleman.  That's not a claim recognized by
16   Stengel.  That's not a claim.
17        Coleman is a very different case.  Coleman is a
18   case in which the plaintiffs were able to allege that the
19   manufacturer had done clinical studies where there were as
20   high as 70 percent of an adverse event that was actually
21   happening in patients that they reported zero to the FDA.
22        Well, there the plaintiffs could point to actual
23   underreporting and say, "Hey, these are adverse event that
24   are actually happening in your clinical studies that you did
25   not report to the FDA.  That's a failure to warn claim
```

1    recognized under California law."

2         That's not what's going on in these cases.  This

3    is hypothetically, maybe if you'd done the studies

4    differently, there would have been additional adverse events

5    to report.

6         That's why their Complaints in this case, in

7    Vieira, in Tammi Jacob, in Billetts don't identify any

8    adverse events that Mentor failed to report to the FDA.

9         They simply say, if you had done your

10   post-approval studies differently, which is, of course,

11   something the FDA regulates, maybe you would have had

12   additional adverse events, and that's just not a claim

13   that's recognized.

14        And again, Your Honor, I mean, we've won this case

15   before.  We've won it in Ebrahimi.  We've won it multiple

16   times after three chances to amend.  We won it in Mize,

17   multiple chances to amend the Complaint.

18        So I don't think the plaintiffs can amend the

19   Complaint here to satisfy the deficiencies to get around

20   preemption.

21        This is exactly the type of case that the Supreme

22   Court has said in Buckman and in Riegel is supposed to be

23   preempted by federal law because there is an entity called

24   the FDA who's already ruled on the safety and efficacy of

25   these devices.

```
 1              THE COURT:  All right.

 2              MR. RAWLIN:  Thank you, Your Honor.

 3              THE COURT:  All right.  Thank you, Counsel.

 4              MR. FINSON:  May I respond?

 5              THE COURT:  Yes, Mr. Finson.

 6              MR. FINSON:  Two minutes.

 7              Number one, I think Mr. Rawlin jumped the gun when

 8   he said Ebrahimi and Mize are one.  No, they're both in the

 9   courts of appeals.

10              Mize, I guess, is in the state -- California State

11   Court of Appeals.  Ebrahimi, the issues are joined in the

12   Ninth Circuit at this point.  So he may have won the lower

13   court but not later.

14              Secondly, he indicates that, if the studies may

15   have been done correctly, then there may have been --

16   whatever might have happened from those studies, we would

17   find out.

18              What Mr. Rawlin is saying is that, because those

19   studies weren't done, we should not be allowed to say they

20   should have been done, and that's part of our claim, that

21   they were not done.

22              And because of that, doctors are -- have been

23   precluded from obtaining information that they would have

24   been able to get from the FDA's Website or other places that

25   those things happened with.
```

```
 1          And then the defendants have said, "Oh, well, you
 2   know, who knows whether or not FDA would have put it on
 3   there."  Well, you know, if you don't give us a chance, the
 4   doctors a chance to know what's going on, then I think
 5   you've got a real problem.
 6          Lastly, they have won every single case
 7   apparently, they think, except that in Vieira.  You know,
 8   Mr. Rawlin's right.  I -- it was my fault.  I brought in
 9   some different tentative ruling in the Vieira case in state
10   court after you sent it back, and the ruling there was we
11   won.  But again, it was a tentative ruling, and there was no
12   definitive ruling, but nonetheless, at least, in that case,
13   our judge in the state court indicated that we were correct.
14          That's all I have to say.  Thank you, Your Honor.
15          THE COURT:  All right.  Well, thank you, Counsel,
16   for the spirited and thorough argument on both sides.  I'm
17   going to take these matters under submission.  So the matter
18   will remain under submission until the Court issues its
19   final order.
20          Have a good weekend, safe travels to those that
21   are traveling.  I guess I may see you all again on August
22   the 2nd.  So all right.  Thank you, all.
23          THE CLERK:  All rise.  This Court is in recess.
24      (Proceedings concluded at 11:57 A.M.)
25
```

CERTIFICATE


    I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  February 10, 2020.




                    ___/S/ CHIA MEI JUI_____

                    Chia Mei Jui, CSR No. 3287